UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DEBORAH MUGFORD, INDIVIDUALLY AND AS SURVIVING MOTHER OF PHILLIP MUGFORD, AND AS PERSONAL REPRESENTATIVE ON BEHALF OF THE ESTATE OF PHILLIP MUGFORD,

Plaintiff,

v.

Case No. 2:25-cv-919-KCD-KRH

SERGEANT JUAN BASILIO, INDIVIDUALLY; OFFICER CHRISTOPHER YEUNG, INDIVIDUALLY; SERGEANT RAMI TABIL, INDIVIDUALLY; CENTURION OF FLORIDA LLC, NURSE JOHN DOES,

Defendants.
_______________________________/

# ORDER

This case arises from a profound tragedy: the death of Phillip Mugford by suicide while incarcerated at the Charlotte Correctional Institution. His estate now sues the facility's healthcare provider, Centurion of Florida, LLC, and several correctional officers. (Doc. 42.)[1] Against Centurion, the estate alleges that the company's policy of ignoring mental health crises paved the

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

way for this fatal outcome. The estate grounds its claims in the Eighth Amendment, arguing that Centurion's indifference crossed the line into cruel and unusual punishment. (*Id.* at 44-46.)

We have been here before. When the Court dismissed the estate's original complaint, we explained that the Eighth Amendment sets a high bar in prison suicide cases. It is not enough to allege that a provider delivered shoddy psychiatric care or ignored signs of distress. To state a claim for deliberate indifference, a plaintiff must show the defendant had actual, subjective notice of a "strong likelihood" that the inmate would take his own life. *Tittle v. Jefferson Cnty. Comm'n*, 10 F.3d 1535, 1539 (11th Cir. 1994). Because the original complaint never alleged that Phillip had a history of suicide attempts, had threatened self-harm, or was formally flagged as a risk, we held that Centurion lacked the requisite notice.

The amended complaint attempts to fix this by alleging that Centurion was aware of Phillip's "immediate suicide-related needs." But there are no actual facts to support that claim. A plaintiff cannot survive a motion to dismiss by simply declaring what a defendant knew; she must plead facts establishing that notice. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Because the latest complaint relies

on conclusory labels rather than facts showing that Centurion was aware of a substantial risk of serious harm, it falls short for the same reasons as before.

## I. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient facts, accepted as true, to state a facially plausible claim for relief." *Galette v. Goodell*, No. 23-10896, 2023 WL 7391697, at *3 (11th Cir. Nov. 8, 2023). "A claim is facially plausible if it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The question at this stage is not whether the plaintiff will ultimately win, but simply whether the complaint can proceed into discovery.

At this starting gate, we must accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). That benefit of the doubt, however, has limits. The court is not bound to accept legal conclusions dressed up as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading that offers nothing more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not unlock the courthouse doors. *Id.* In short, the plaintiff must tell a factual story that makes the defendant's liability plausible, not just point a finger and recite the law. *See, e.g.*, *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

### III. Discussion

Under 42 U.S.C. § 1983—the statute governing Mugford's claims against Centurion—there is no vicarious liability. A local government cannot be held liable for civil rights violations simply because it employs a bad actor. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). To be on the hook, the government itself must be the wrongdoer. The claimant must show that the execution of a specific policy or custom is what inflicted the constitutional injury. When a private company like Centurion contracts to provide prison medical care, it takes on a traditional state function and becomes the practical equivalent of the municipality. *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997). That means Centurion gets the same *Monell* treatment: it is liable only for its own unconstitutional policies or customs. *Id.*

So to state a valid claim against Centurion, Mugford must adequately plead three things. First, Phillip's constitutional rights were violated. Second, Centurion had a policy or custom exhibiting deliberate indifference to that constitutional right. And third, Centurion's policy or custom caused the violation. *Est. of Hand by & through Hand v. Fla. Dep't of Corr.*, No. 21-11542, 2023 WL 119426, at *6 (11th Cir. Jan. 6, 2023).

When evaluating a § 1983 claim, the natural first step is "to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510

U.S. 266, 271 (1994). Here, it is the Eighth Amendment's Cruel and Unusual Punishments Clause. (Doc. 42 ¶¶ 125, 135.) When the state takes away a person's liberty, it must provide for his basic human needs—which encompasses a right to psychiatric and mental health care, as well as protection from self-inflicted injuries. *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1396 (11th Cir. 1994). If prison guards, or the contracted medical staff acting on their behalf, show "deliberate indifference to a strong likelihood that a prisoner will take his own life, [they] violate the Eighth Amendment and may be liable under [§] 1983." *Id.*

Deliberate indifference in this context is a term of art. It does not mean the nurses provided subpar mental health care. It means they knew there was a strong probability Phillip would kill himself and chose to do nothing about it. *See, e.g.*, *Jones v. City of Decatur, Ala.*, No. CV-09-S-1294-NE, 2010 WL 11614092, at *7 (N.D. Ala. July 28, 2010) ("Deliberate indifference requires that the defendant deliberately disregard a strong likelihood rather than a mere possibility that the self-infliction of harm will occur."). That leaves us with a single, pointed question to answer: did Centurion (through its staff on the scene) deliberately ignore a known, strong likelihood that Phillip would commit suicide?

"To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind." *Farmer v. Brennan*,

511 U.S. 825, 834 (1994). And because there is no respondeat superior liability under § 1983, the prison official himself—in this case, Centurion—must have known that the prisoner was at a high risk of suicide. *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005). In other words, an allegation of deliberate indifference, in the context of jail suicides, "must be considered in light of the level of knowledge possessed by the officials involved, or that which should have been known as to an inmate's suicidal tendencies." *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990).

The Eleventh Circuit's decision in *Tittle v. Jefferson Cnty. Comm'n* draws a bright line here. 10 F.3d 1535 (11th Cir. 1994). "[A] finding of deliberate indifference requires that officials have notice of the suicidal tendency of the individual whose rights are at issue in order to be held liable for the suicide of that individual." *Id.* at 1539. An inmate who has never threatened suicide, never attempted it, and never been deemed a risk does not put the staff on notice. *Id.* at 1540. The Eleventh Circuit enforces this rule strictly, "no matter how defendants' actions might be viewed." *Id.* So a plaintiff cannot survive dismissal by showing that suicide was a "mere possibility." *Id.* She must prove there was a "strong likelihood" it would happen. *Id.*

The latest complaint cannot clear this hurdle. To be sure, the estate repeatedly declares that Centurion was aware of Phillip's "suicidal ideations" and "immediate suicide-related needs." But as the Supreme Court has made clear, we do not accept conclusory assertions as true just because they are written in a complaint. *Iqbal*, 556 U.S. at 678; *see also Smith v. Osceola Cnty., Fla.*, No. 6:13-CV-1797-ORL-31, 2014 WL 949038, at *2 (M.D. Fla. Mar. 11, 2014) (rejecting deliberate indifference claim where "[a]ll [the complaint] offers is the conclusory statement that they had notice"). When you strip away the labels and conclusions, the actual facts show a man in undeniable psychological distress: he was hallucinating, shaking his cell door, and yelling "psychological emergency" to the passing nurses. What the complaint still does not allege, however, is that Phillip ever told those nurses he planned to harm himself, that he had a history of prior suicide attempts, or that he was formally flagged by the facility as a suicide risk. A severe mental breakdown is a terrible thing, but it is not a proxy for suicidal intent.

The estate proclaims that "[a] declared psychological emergency is no ordinary inmate complaint; it signals an immediate risk of self-harm or psychiatric decompensation and may itself place officials on notice of a substantial risk of serious harm." (Doc. 62 at 7.) But that argument tries to rewrite the law. The Eighth Amendment requires subjective awareness of a strong likelihood of *suicide*—not just a generalized risk of mental distress.

*See Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1268-69 (11th Cir. 2005). Conflating a severe psychological episode with an immediate threat of suicide blurs a line that our precedent demands we keep sharp. Erratic behavior and spiraling mental crises are deeply concerning. But they do not, standing alone, telegraph that an inmate is about to take his own life. *See, e.g.*, *Fowler v. Chattooga Cnty., Ga.*, No. 4:07-CV-0145-HLM, 2008 WL 11432089, at *9 (N.D. Ga. Apr. 25, 2008) ("The fact that an inmate may fit the profile of a high suicide risk is not sufficient.").

The estate spends dozens of pages detailing Centurion's systemic failures, pointing to state audits, prior lawsuits, and a troubled history of mental health care. But here is the problem: a custom or policy, no matter how egregious, does not create liability out of thin air. There must be an underlying constitutional violation. *See Garczynski v. Bradshaw*, 573 F.3d 1158, 1170 (11th Cir. 2009) ("Analysis of a state entity's custom or policy is unnecessary, however, when no constitutional violation has occurred."). Because the estate has failed to allege facts showing that Centurion staff actually knew Phillip was a suicide risk, there is no underlying Eighth Amendment violation. And without that foundational violation, no amount of bad evidence about Centurion can save the claim.

The allegations that Centurion nurses ignored Phillip might well state a claim for medical negligence in treating his mental health. But they do not

establish that the nurses had actual, subjective notice of a strong likelihood of suicide. And without that notice, the estate's deliberate indifference claims directed at Phillip's suicide must be dismissed. *See Gantt v. Everett*, 162 F.4th 1107, 1111-12 (11th Cir. 2025); *Hofer v. City of Auburn, Ala.*, 155 F. Supp. 2d 1308, 1316 (M.D. Ala. 2001).

## III. Conclusion

The Court previously told the estate what was missing from its deliberate indifference claims: facts showing that Centurion had actual notice of a strong likelihood of suicide. Despite an opportunity to cure that defect, the estate failed to do so. When a plaintiff is given a roadmap of what the law requires and still cannot plead the necessary facts, it strongly suggests those facts do not exist. Keeping these claims alive would thus be futile.

What is more, the estate has not asked for leave to amend its complaint a second time. And "a district court is not required to grant a plaintiff who is represented by counsel leave to amend his complaint sua sponte." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 544 (11th Cir. 2002). The estate had its chance to state a viable claim against Centurion, and the law does not require the Court to give it another one. Accordingly, Centurion's Motion to Dismiss (Doc. 47) is **GRANTED**. The claims in Counts IV and V are **DISMISSED WITH PREJUDICE**. The Clerk is directed to terminate

Centurion of Florida LLC, but judgment is withheld until the conclusion of this case. *See* Fed. R. Civ. P. 54(b).

**ORDERED** in Fort Myers, Florida on July 20, 2026.



Kyle C. Dudek
United States District Judge