UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DEBORAH MUGFORD, INDIVIDUALLY AND AS SURVIVING MOTHER OF PHILLIP MUGFORD, AND AS PERSONAL REPRESENTATIVE ON BEHALF OF THE ESTATE OF PHILLIP MUGFORD,

Plaintiff,

v.

Case No. 2:25-cv-919-KCD-KRH

SERGEANT JUAN BASILIO, INDIVIDUALLY; OFFICER CHRISTOPHER YEUNG, INDIVIDUALLY; SERGEANT RAMI TABIL, INDIVIDUALLY; NURSE JOHN DOES,

Defendants.
_______________________________/

# ORDER

This case stems from a tragedy. Phillip Mugford took his own life while incarcerated at the Charlotte Correctional Institution. His mother, Deborah Mugford, now brings this civil rights lawsuit on behalf of his estate, claiming that he was subjected to excessive force and deliberate indifference. Defendants Juan Basilio and Christoper Yeung, the corrections officers who responded to his cell, move to dismiss. (Doc. 50.) For the reasons below, Defendants' motion is **GRANTED**.

## I. Background

Here are the relevant facts taken from the operative complaint, which at this stage must be taken as true. Phillip's mental health plummeted behind bars. (Doc. 42 ¶ 56.) He suffered from severe psychological distress, manifesting in screams and hallucinations echoing from his cell. (*Id.*) Cellmates described his agonizing episodes as "war flashbacks." (*Id.* ¶ 59.) Yet when Phillip cried out for help, the corrections officers allegedly did nothing. (*Id.* ¶¶ 61-62, 66.) His repeated requests for medication and psychiatric treatment went unanswered. (*Id.* ¶¶ 68-69.)

The day of his suicide, Phillip was in restrictive confinement because of his mental illness and decline. (*Id.* ¶ 15.) Prison staff allegedly skipped a mandatory security check at 4:40 pm. (*Id.* ¶¶ 44-45.) At around 5:10 pm, another inmate noticed Phillip hanging from a bed sheet in his cell and called for help. (*Id.* ¶ 15-18.) Basilio and Yeung responded to his cell door, but did not go in. Instead, they directed Phillip to stop hanging, but he didn't respond. (*Id.* ¶ 19.) Basilio then sprayed two canisters of a chemical agent into Phillip's cell and repeatedly told him to stop hanging, while Yeung stood by. (*Id.* ¶ 21.) The estate believes that the chemical spray contributed to Phillip's death. (*Id.* ¶ 23.)

Basilio and Yeung waited until supervising officers arrived at the cell around 5:13 pm before attempting to enter. (*Id.* ¶ 24.) Yeung handcuffed

Phillip, and he was removed from the cell as lifesaving measures were performed. (*Id.* ¶ 26.)

## II. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient facts, accepted as true, to state a facially plausible claim for relief." *Galette v. Goodell*, No. 23-10896, 2023 WL 7391697, at *3 (11th Cir. Nov. 8, 2023). "A claim is facially plausible if it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The question at this stage is not whether the plaintiff will ultimately win, but simply whether the complaint can proceed into discovery.

At this starting gate, we must accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). That benefit of the doubt, however, has limits. The court is not bound to accept legal conclusions dressed up as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading that offers nothing more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not unlock the courthouse doors. *Id.* In short, the plaintiff must tell a factual story that makes the defendant's liability plausible, not just point a finger and recite the law. *See, e.g.*, *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## III. Discussion

The estate brings three claims against Basilio and Yeung: excessive force (Counts I & II) and deliberate indifference (Count III).

### A. Excessive Force (Counts I & II)

The estate alleges that Basilio and Yeung violated Phillip's Eighth Amendment right to be free from excessive force when they sprayed chemical gas in Phillip's cell when he was hung by the bed sheet, incapacitated. The estate also alleges that Yeung failed to intervene as Basilio deployed the chemical gas. Defendants argue they are entitled to qualified immunity for their actions. The Court agrees.

"Section 1983 creates a cause of action against any person who deprives someone of their federally protected rights under color of state law." *King v. Marceno*, No. 2:24-CV-375-KCD-DNF, 2025 WL 3080544, at *4 (M.D. Fla. Nov. 4, 2025). "[T]he Eighth Amendment prohibits force that offends contemporary standards of decency, regardless of whether significant injury is evident[.]" *Sconiers v. Lockhart*, 946 F.3d 1256, 1266 (11th Cir. 2020). So jailers who use, or fail to intervene in the use of, excessive force may face liability under § 1983. *See Ireland v. Prummell*, 53 F.4th 1274, 1301 (11th Cir. 2022) ("[A] claim for failure to intervene requires an act of excessive force by the perpetrating officer in the first instance[.]"); *Crocker v. Beatty*, 995 F.3d 1232, 1246 (11th Cir. 2021).

To be entitled to qualified immunity, a government official must first prove that he was acting within his discretionary authority at the time of the alleged violation. *See Donald v. Norris*, 131 F.4th 1255 (11th Cir. 2025). After a defendant meets this initial burden, the plaintiff must show that (1) the official violated his constitutional or statutory rights and (2) those rights were clearly established at the time the official acted. *See Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017). "When qualified immunity is asserted in the context of a motion to dismiss, [courts] look to the pleadings to see if the plaintiff has successfully alleged the violation of a clearly established right." *O'Rourke v. Hayes*, 378 F.3d 1201, 1206 (11th Cir. 2004).

There is no dispute that Basilio and Yeung were acting within the scope of their authority. So the burden shifts to the estate to establish that qualified immunity does not apply. *See Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016). Here, the qualified immunity analysis begins—and ends—with whether the alleged constitutional violation was contrary to clearly established law.

"The touchstone of the 'clearly established' inquiry is whether the official had 'fair warning' and notice that his conduct violated the constitutional right in question." *Melton v. Abston*, 841 F.3d 1207, 1221 (11th Cir. 2016 (11th Cir. 2016). For the law to be clearly established, "case law must ordinarily have been earlier developed in such a concrete and factually

defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates a federal law." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000). "The Court looks to the binding precedent set forth in the decisions of the Supreme Court, the Eleventh Circuit, or the highest court of the state ... to decide whether a right is clearly established." *Melton*, 841 F.3d at 1221. "Exact factual identity with a previously decided case is not required, but the unlawfulness of the conduct must be apparent from the pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011).

At the time of the constitutional violation here, the estate has identified no clearly established law that could have given Basilio and Yeung fair notice that spraying Phillip before they entered his cell amounted to excessive force.

Officers may use chemical agents so long as a valid penological reason supports its use and it is not used in "quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." *Thomas v. Bryant*, 614 F.3d 1288, 1310-11 (11th Cir. 2010) ("[I]t is well-established that the use of chemical agents on recalcitrant prisoners is not per se unconstitutional."); *see also Sconiers*, 946 F.3d at 1264 (acknowledging "pepper-spray" may be used to subdue an inmate when penologically necessary); *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008) ("Pepper spray is an accepted non-lethal means of controlling unruly inmates"). "Force is deemed legitimate in a

custodial setting as long as it is applied in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002).

The Florida Administrative Code echoes this authority by authorizing the Department of Corrections to use the force applied here. The Code authorizes "reactionary force" to prevent an inmate from "attempting to hang himself." Fla. Admin. Code r. 33-602.210(4)(b)(7). "Reactionary use of force" is defined as "[a]ny force that must be administered quickly or immediately to compel the cessation of an inmate's violence or resistance to a lawful order." *Id.* at 33-602.210(1)(x). The use of chemical agents to "[p]revent an inmate from inflicting any self-injury or from attempting to commit suicide" is authorized. *Id.* at 33-602.210(5)(b)(1).

The estate relies on *Thomas v. Bryant*, 614 F.3d 1288 (11th Cir. 2010), to argue a violation of a clearly established right. But in *Thomas*, the prisoner was in his cell, posing no immediate threat of harm to himself when he was pepper-sprayed. *Id.* at 1312. Self-harm is the scenario that officers were confronted with here, and the Eleventh Circuit has found that pepper spray on a suicidal or self-harming inmate is not excessive force. In *Jacoby v. Baldwin Cnty.*, 596 F. App'x 757 (11th Cir. 2014), the court held that prison officers were justified in using pepper spray to extract a detainee from his cell safely because the detainee had threatened violence in addition to self-harm

and officers reasonably could have believed the detainee might harm himself further. *Id.* at 766.

Taking the estate's allegations as true, not every reasonable officer would have known that spraying a chemical agent into an inmate's cell who is attempting to commit suicide violates the Eighth Amendment right against excessive force. At bottom, "[p]rison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990). Because "[p]epper spray is an accepted non-lethal means of controlling unruly inmates," *Danley*, 540 F.3d at 1307, the officers here did not clearly use excessive force by deploying spray in order to force Phillip to comply with their orders. Thus, the officers are entitled to qualified immunity.

**B. Deliberate Indifference (Count III)**

The estate alleges that Basilio and Talib were deliberately indifferent to Phillip's serious medical condition. The estate made the same claim against Defendant Centurion, which was dismissed because the nurses did not know that Phillip was suicidal. (Doc. 65 at 7 ("The Eighth Amendment requires subjective awareness of a strong likelihood of suicide.") The same reasoning and result apply here. The allegations do not establish that Basilio and Yeung had actual, subjective notice of a strong likelihood of suicide. And

without that notice, the estate's deliberate indifference claims directed at Phillip's suicide must be dismissed. *See Gantt v. Everett*, 162 F.4th 1107, 1111-12 (11th Cir. 2025); *Hofer v. City of Auburn, Ala.*, 155 F. Supp. 2d 1308, 1316 (M.D. Ala. 2001).

**IV. Conclusion**

Basilio and Yeung are entitled to qualified immunity on the excessive force claims. And the Court has previously noted what was missing from the estate's deliberate indifference claims: facts showing an actual notice of a strong likelihood of suicide. (Doc. 40.) Despite an opportunity to cure that defect, the estate failed to do so. When a plaintiff is given a roadmap of what the law requires and still cannot plead the necessary facts, it strongly suggests those facts do not exist. Keeping these claims alive would thus be futile. What is more, the estate has not asked for leave to amend its complaint a second time. And "a district court is not required to grant a plaintiff who is represented by counsel leave to amend his complaint sua sponte." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 544 (11th Cir. 2002). The estate had its chance to state a viable claim, and the law does not require the Court to give it another one. Accordingly, Defendants Basilio and Yeung's Motion to Dismiss (Doc. 50) is **GRANTED**. The claims in Counts I, II, and III are **DISMISSED WITH PREJUDICE**. The Clerk is directed to

terminate Juan Basilio and Christoper Yeung, but judgment is withheld until the conclusion of this case. *See* Fed. R. Civ. P. 54(b).

**ORDERED** in Fort Myers, Florida on August 27, 2026.

Kyle C. Dudek
United States District Judge